PEOPLE v GAINES

Docket Nos. 310367, 310368, and 310369. Submitted April 1, 2014, at Lansing. Decided August 5, 2014, at 9:00 a.m. Leave to appeal sought.

Logan S. Gaines was convicted following a jury trial of three consolidated cases in the Saginaw Circuit Court, Janet M. Boes, J., of accosting, enticing, or soliciting a child (CP) for immoral purposes, third-degree criminal sexual conduct (CSC-III) (sexual intercourse with AW, a victim 13 to 15 years old), three other counts of CSC-III (digital penetration with MM, a victim 13 to 15 years old), and accosting a child (MM) for immoral purposes. Defendant appealed separately with regard to each case. The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. A reasonable trier of fact could conclude from the evidence that AW was 15 years old when she had sexual intercourse with defendant. The trial court did not abuse its discretion by denying defendant's motion for a new trial that alleged that the prosecution failed to prove that AW was under 16 years of age for purposes of the CSC-III conviction regarding AW under MCL 750.520d(1)(a).

2. Any error in the charging documents regarding the dates of the second and third acts of CSC-III involving MM did not affect defendant's substantial rights. Defendant presented a defense and did not demonstrate prejudice from the alleged imprecision regarding the exact dates of the offenses.

3. Defendant failed to demonstrate plain error affecting his substantial rights from any imprecision regarding the time during which the accosting regarding MM and CP was alleged to have occurred.

4. Defendant failed to establish prejudice from defense counsel's failure to object with regard to any imprecision concerning the applicable dates stated in the charging documents.

5. The trial court did not abuse its discretion by admitting evidence of other charged and uncharged acts by defendant under MCL 768.27a. The statute does not preclude the prosecution from

incorporating the disclosure of the evidence by reference to the other acts recounted in police reports and disclosed in discovery when the prosecution filed its notice of intent to offer the evidence. Any error in the disclosure was harmless. It was not error to conclude that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice.

6. Offenses are related for purposes of MCR 6.120(B)(1)(c) when the evidence indicates that the defendant engaged in ongoing acts constituting parts of the defendant's overall scheme or plan. The trial court did not err by ruling that the charged offenses were related. The trial court did not abuse its discretion by holding that joinder of the three cases was appropriate. Joinder of the three cases did not affect defendant's constitutional right to remain silent.

7. Although the trial court improperly excluded as hearsay AW's testimony regarding whether the police intimidated her and forced her to testify, the error was harmless and did not affect defendant's substantial rights.

8. Defendant failed to establish prejudice with regard to the parties' stipulation to dismiss one of two counts of accosting with regard to MM after the jury was selected and informed of the charges.

9. The prosecutor erred by asking defendant to comment regarding the credibility of several witnesses' testimony. A timely objection could have cured the error. Defendant failed to establish that the questions affected his substantial rights.

10. The prosecutor did not suggest in his closing arguments that he had personal knowledge that his witnesses were worthy of belief while defendant was not.

11. The prosecutor did not improperly appeal to the jury to sympathize with the victims because of their young age.

12. Defendant failed to provide evidentiary support to overcome the presumption that his counsel employed trial strategy when counsel failed to object to the cross-examination of defendant regarding the credibility of the prosecutor's witnesses.

13. Defendant waived any error regarding the jury instructions for the accosting charges. Because there was overwhelming evidence that defendant intended to induce the victims to send naked photographs to him, defense counsel's failure to object to the absence of the specific-intent element of the "accosts, entices, or solicits" prong of the offense did not prejudice defendant. Defendant was not denied the effective assistance of counsel.

14. The trial court's statement to the prospective jurors that characterized the cases as "kind of related" was not improper and did not indicate that the judge was not impartial.

15. The trial court did not plainly err when it responded to the jury's request for further clarification regarding the CSC-III instruction. Defense counsel was not ineffective for failing to object to the trial court's response.

16. Absent any showing that the identities of any other alleged recipients of naked photographs from the victims had any particular relevance, defendant's right of confrontation was not denied when the trial court precluded testimony about the identities of others the victims may have sent naked photographs.

17. Both MM and AW were "victims" for purposes of MCL 750.520j because they alleged that they were subjected to criminal sexual conduct. MCL 750.520a(s). Evidence of any instances of sexual contact MM and AW may have had with other boys was inadmissible under MCL 750.520j. Regardless whether MM and AW were testifying to support their own case or to provide other-acts evidence under MCL 768.27a for the other cases, they still alleged that they were subjected to criminal sexual conduct and were "victims" under MCL 750.520a(s).

18. Because, in his defense to the accosting charges, defendant claimed that the victims first initiated sending naked photographs to him and that they sent naked photographs to others, whether the victims had sexual contact with others was not relevant to defendant's defense to those charges. Defendant had no right to confrontation regarding irrelevant issues.

19. MCL 750.145a is not unconstitutional on its face. The statute is neither vague nor overbroad.

20. The trial court erred by ordering defendant to pay restitution for the general costs of investigating and prosecuting his criminal activity. Such costs did not constitute direct financial harm to the governmental entities resulting from defendant's crimes. The portion of the judgment of sentence ordering restitution is vacated and the cases are remanded to the trial court for entry of an amended judgment of sentence.

Convictions affirmed, order of restitution vacated, and remanded for entry of an amended judgment of sentence.

1. CRIMINAL LAW — EVIDENCE — NOTICE.

MCL 768.27a provides that in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a

minor is admissible and may be considered for its bearing on any matter to which it is relevant; the statute requires a prosecuting attorney who intends to offer such evidence to disclose the evidence to the defendant at least 15 days before trial but does not preclude the prosecutor from incorporating the disclosure of the evidence in the notice of intent by reference.

2. APPEAL AND ERROR — CUMULATIVE EFFECT OF ERRORS.

Only "actual errors" are aggregated when reviewing a claim that the cumulative effect of prosecutorial errors warrants reversal.

3. CONSTITUTIONAL LAW — STATUTES — ACCOSTING CHILD FOR IMMORAL PURPOSES.

The provisions of MCL 750.145a are neither unconstitutionally vague nor overbroad.

4. SENTENCES — RESTITUTION — COSTS OF INVESTIGATING AND PROSECUTING CRIMES.

A trial court errs by ordering a defendant to pay restitution to a governmental entity for the general costs of investigating and prosecuting the defendant's criminal activity; such costs do not constitute direct financial harm to the governmental entity resulting from the defendant's crime (MCL 780.766(1)).

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *John A. McColgan, Jr.*, Prosecuting Attorney, and *Randy L. Price*, Assistant Prosecuting Attorney, for the people.

*John F. Royal* for defendant.

Before: WILDER, P.J., and FITZGERALD and MARKEY, JJ.

WILDER, P.J. Defendant appeals as of right his convictions following a jury trial of three consolidated cases. We consolidated the appeals. In Saginaw Circuit Court Docket No. 10-035017-FH, defendant was convicted of accosting, enticing, or soliciting a child (CP) for immoral purposes, MCL 750.145a, and sentenced to 13 months to 4 years in prison. In Docket No. 10-035018-FH, defendant was convicted of third-

degree criminal sexual conduct (CSC-III) involving AW, MCL 750.520d(1)(a) (sexual intercourse with a victim 13 to 15 years old), and sentenced to 4 to 15 years in prison. In Docket No. 10-035019-FH, defendant was convicted of three counts of CSC-III involving MM (digital penetration with a victim 13 to 15 years old) and accosting a child (MM) for immoral purposes, and was sentenced to 4 to 15 years in prison for the CSC-III convictions and 13 months to 4 years in prison for the accosting conviction. We affirm defendant's convictions, vacate the portion of the judgment of sentence ordering restitution, and remand to the trial court for entry of an amended judgment of sentence.

I

The cases against defendant arose out of his interactions with AW, CP, and MM in his senior year of high school (2008-2009) and the year following his graduation, when he was 18 or 19 years old. In defendant's senior year, he met AW. AW testified that she really got to know defendant during the 2009 track season, when she was 15 years old. They both attended a bonfire, which defendant testified was in May 2009. According to AW, they left the bonfire, went to defendant's parents' house, and had "consensual" sexual intercourse in defendant's basement bedroom. Defendant claimed they only "made out."

MM met defendant in October 2009 after defendant had graduated. MM was 13 or 14 years old. MM testified that she and defendant exchanged text messages and that, at first, their text messages were not personal. MM testified that in November or December 2009, defendant asked for photographs of MM and that, later, defendant asked for photographs with her clothes off. MM explained that she first sent photographs of her buttocks and

stomach, but when defendant asked for photographs of her breasts and vagina, she sent them.[1]

The record demonstrated that MM also visited defendant's parents' house on several occasions. MM testified that, in May 2010, defendant "fingered" MM in his basement by putting his finger in her vagina for three to five minutes. About a week later, MM asked defendant to hang out. He picked up MM and her friend, Sarah Cramer. MM testified that defendant digitally penetrated her when Cramer went to the bedroom to talk on the phone. Although Cramer came out of the bedroom while defendant was digitally penetrating her, MM testified that she did not think Cramer knew what was happening because defendant's back was to Cramer and the lights and television were off.[2] MM testified that she told Cramer what defendant did to her after they got home. Although Cramer told the police that MM had said "nothing happened," Cramer testified at trial that she was afraid of getting in trouble and that MM had actually said that defendant "fingered" her. MM testified that, around June 10, 2010, she visited defendant's parents' house again and he digitally penetrated her on his bed. Defendant offered contrary testimony from his friend, who testified that he was present during this visit and never left MM and defendant alone.

Although he never tried to have sexual intercourse with MM, defendant texted MM, "I wanna f*** you if you weren't so young." According to MM, defendant also told her not to tell others about their relationship because he knew their age difference was "illegal."

---

[1] MM testified that defendant was not the first person to whom she had sent naked photographs.

[2] Defendant's sister testified, however, that she went downstairs repeatedly under the guise of doing laundry to check up on the children and that whenever she went downstairs, the lights and television were on.

Defendant met and started texting CP in the spring of 2010 when she was 14 years old[3] and on the track team. Defendant had graduated, but was practicing at the high school track to prepare for college track tryouts. At the same time, he helped some students, including CP, on the track team. CP testified that defendant asked for naked photographs,[4] which she sent from about May 2010 to July 2010. CP testified that, if she refused to send photographs, defendant would threaten not to talk to her or help her with track. CP also testified that defendant told her not to tell anyone what was happening.

In the summer of 2010, MM's father discovered her communications with defendant and contacted the police. In August 2010, Detective Jason Wise interviewed defendant. Detective Wise testified that defendant initially denied that MM had sent him naked photographs, but after the detective showed him the photographs on a computer, defendant admitted that she had sent him photographs of her buttocks, lower body, and breasts. Detective Wise testified that defendant also admitted that he used his finger to penetrate MM's vagina on at least two occasions.

Throughout trial, defendant testified that he did not have sexual intercourse with any of the victims. Contrary to Detective Wise's testimony, defendant specifically denied penetrating MM with his finger. Defendant testified that he only told MM to send him photographs that she had already sent to at least two other boys. Similarly, defendant testified that CP had originally suggested sending him pictures and that he had merely persisted in asking for them afterward.

---

[3] Defendant testified that he thought CP was 16 years old.

[4] On cross-examination, CP testified that she could have first sent defendant a picture.

II

Defendant first challenges the sufficiency of the evidence to support his conviction of CSC-III with regard to AW. Defendant further claims this conviction was against the great weight of the evidence and the trial court abused its discretion when it denied his motion for a new trial. We disagree.

A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). The trial court's decision regarding defendant's motion for a new trial is reviewed for an abuse of discretion. *People v Lemmon*, 456 Mich 625, 642, 644; 576 NW2d 129 (1998).

In challenging his conviction of CSC-III with regard to AW, defendant only alleges that the prosecutor failed to prove that AW was under 16 years of age for purposes of MCL 750.520d(1)(a)[5] when she and defendant had sexual intercourse. The prosecutor established that AW met defendant when she was a freshman and he was a senior. AW further testified that she encountered defendant at a bonfire, which they left to go to defendant's parents' house, where they had sexual intercourse in his basement bedroom. We agree with defendant that AW did not testify when the bonfire occurred. But defendant testified that the bonfire occurred in May 2009. Given evidence in the record that AW was born in December 1993, a reasonable trier of fact could con-

---

[5] MCL 750.520d(1)(a) provides: "A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person" and the "other person is at least 13 years of age and under 16 years of age."

clude that AW was 15 years old at the time of the May 2009 bonfire, when she had sexual intercourse with defendant.

The trial court denied defendant's motion for a new trial, holding that the great weight of the evidence supported a finding that AW was 15 years old at the time of the offense. None of the exceptional circumstances that would warrant a conclusion that the finding was against the great wright of the evidence, as expressed in *Lemmon*, 456 Mich at 643-644, are present in this case. Thus, nothing warrants a conclusion that this verdict is contrary to the great weight of the evidence. The evidence does not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). The trial court did not abuse its discretion by denying the motion for a new trial.

III

Defendant next claims he was denied his constitutional rights to due process and notice of the accosting charges and two of the charges of CSC-III with regard to MM because there was no evidence that those offenses occurred on or about May 1, 2010, as set forth in the charging documents. We disagree. Defendant's unpreserved constitutional claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763, 774; 597 NW2d 130 (1999).

"The Due Process Clause of the Fourteenth Amendment mandates that a state's method for charging a crime give a defendant fair notice of the charge against the defendant, to permit the defendant to adequately prepare a defense." *People v Chapo*, 283 Mich App 360, 364; 770 NW2d 68 (2009); see *Chambers v Mississippi*,

410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973). "Prejudice is essential to any claim of inadequate notice." *Chapo*, 283 Mich App at 364.

MCL 767.45(1)(b) provides that the indictment or information shall include: "The time of the offense as near as may be. No variance as to time shall be fatal unless time is of the essence of the offense." MCL 767.51 provides:

> Except insofar as time is an element of the offense charged, any allegation of the time of the commission of the offense, whether stated absolutely or under a videlicet, shall be sufficient to sustain proof of the charge at any time before or after the date or dates alleged, prior to the finding of the indictment or the filing of the complaint and within the period of limitations provided by law: Provided, That the court may on motion require the prosecution to state the time or identify the occasion as nearly as the circumstances will permit, to enable the accused to meet the charge.[6]

In *Turner v People*, 33 Mich 363, 378 (1876), the facts did not allow the prosecutor to "state positively and certainly the exact day" of the offense. But our Michigan Supreme Court ruled:

> This, however, was not important so long as the facts and incidents precluded all doubts respecting the identity of the transaction to be prosecuted, and so long as it was manifest that the act was recent enough to be subject to prosecution, and that a preliminary examination in regard to it had been had. Time is not an ingredient of the offense in any such sense as to make it necessary to charge it according to the truth. The information or indictment may state one time and the proof show a different one without involving an objectionable variance. [*Id.*]

"[I]n *People v Howell*, 396 Mich 16, 27 n 13; 238 NW2d 148 (1976), the Supreme Court suggested that an im-

---

[6] Defendant did not make such a request under MCL 767.51.

precise time allegation would be acceptable for sexual offenses involving children, given their difficulty in recalling precise dates." *People v Naugle*, 152 Mich App 227, 234 n 1; 393 NW2d 592 (1986) (the child victim in *Naugle* was molested from age 8 to 13, a detective testified that children have difficulty remembering the exact dates of individual assaults, and this Court held "it is conceivable that specific dates would not stick out in her mind") *id.* at 235.

The prosecutor alleged in the charging documents that the three acts of CSC-III involving MM occurred on or about May 1, 2010, but defendant argues that the second and third acts must have occurred subsequently. Like the abuse that occurred in *Naugle*, the criminal sexual conduct involving MM was repeated and MM had difficulty remembering the exact dates. *Naugle*, 152 Mich App at 234 n 1. The prosecutor made a good-faith effort to establish the dates with MM's text messages, which reflected when she visited defendant at his parents' house, where the offenses occurred. Furthermore, defendant was not prejudiced in preparing a defense because, at the preliminary examination, MM testified regarding the time frame during which the criminal sexual conduct occurred and, at trial, defendant offered specific testimony from several witnesses about this time frame. Because defendant presented a defense and has demonstrated no prejudice from the imprecise allegations regarding the time of the second and third acts of CSC-III involving MM, any error in the charging documents did not affect defendant's substantial rights.

The bases for the allegations of accosting that occurred on or about May 1, 2010, were text messages from defendant to MM and CP requesting naked photographs. CP testified at the preliminary examination

that she sent the photographs defendant requested during the 2010 track season. MM testified that, in November or December 2009, defendant started asking for naked photographs. Defendant was aware of the allegations by MM as early as his August 2010 interview with the police and, during discovery, he received copies of all the text messages. Defendant admitted that he "studied" the text messages "several times." He testified at trial that "there's a lot of missing texts" and that MM and CP actually offered to send him photographs before he asked for them. Because defendant had pretrial notice of the text messages and presented a defense to the accosting charges accordingly, he cannot demonstrate plain error affecting his substantial rights from the imprecision regarding the time during which the accosting was alleged to have occurred.[7]

Defense counsel was not ineffective for failing to object to the charging documents. Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). To demonstrate ineffective assistance, defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. *People v Grant*, 470 Mich 477, 485-486; 684 NW2d 686 (2004). "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

---

[7] Any related claim regarding the sufficiency or great weight of the evidence does not require reversal because time is not an element of the offenses. See *People v Dobek*, 274 Mich App 58, 83; 732 NW2d 546 (2007); MCL 750.145a.

The result would not have been different if defense counsel had objected to the charging documents. *Id.* Defense counsel had advance notice of the applicable dates of the charged offenses following the preliminary examination and was prepared with a defense, including witness testimony regarding those specific dates. Defendant does not argue that his defense would have been any different if the charging documents had been more specific. Therefore, defendant cannot establish prejudice from defense counsel's failure to object. *Grant*, 470 Mich 485-486.

IV

Defendant also claims that the trial court abused its discretion by admitting evidence of other charged and uncharged acts under MCL 768.27a. We disagree.

The prosecutor offered evidence of the following other acts at trial:

• Charged offenses: The evidence supporting the charges in each victim's case was offered under MCL 768.27a in the other victims' cases.

• Uncharged offenses: Testimony that AW stated, in a previous interview, that defendant asked her for photographs. Testimony that defendant stated he wanted to have sexual intercourse with MM. Testimony that defendant invited CP to sleep with him at his college.

MCL 768.27a provides, in pertinent part:

> (1) Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days

before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

Defendant claims that notice was not provided properly because the prosecutor filed the notice of intent and, rather than listing the other acts in the document, referred defendant to the other acts recounted in the police reports and other discovery. As the trial court found, the statute only requires the prosecutor to "disclose the evidence to the defendant at least 15 days" before trial. The statute does not preclude a prosecutor from incorporating the disclosure of the evidence in the notice of intent by reference. Furthermore, as the trial court found, any error in the prosecutor's disclosure was harmless because defendant does not allege that he was unaware of the other-acts evidence. MCR 2.613(A).

Moreover, it was not error to conclude that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice.[8] Our Supreme Court has explained that there are several considerations that may lead a court to exclude other-acts evidence.

These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the

---

[8] Defendant claims the trial court failed to conduct its balancing of prejudicial effect and probative value under MRE 403 on the record, but a trial court need not state on the record how it balanced the prejudicial effect and probative value. *People v Smith*, 243 Mich App 657, 675; 625 NW2d 46 (2000). The trial court is presumed to know the law, see *People v Garfield*, 166 Mich App 66, 79; 420 NW2d 124 (1988), and it ruled that MRE 403 applied to this evidence. Defense counsel was not ineffective for failing to making a futile objection to the trial court's failure to conduct balancing under MRE 403 on the record. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

infrequency of the other acts, (4) the presence of interven-
ing acts, (5) the lack of reliability of the evidence support-
ing the occurrence of the other acts, and (6) the lack of need
for evidence beyond the complainant's and the defendant's
testimony. [*People v Watkins*, 491 Mich 450, 487-488; 818
NW2d 296 (2012).]

Defendant claims that the other charged acts were
dissimilar because he engaged in sexual penetration
with AW and MM, not CP, and he obtained naked
photographs from MM and CP, not AW. But in each case
defendant formed a relationship with a much-younger
girl at his high school. They used cell phones and text
messaging to communicate. Defendant's pursuit of all
three victims occurred close together in time—during
his senior year of high school and the year following.
The other-acts evidence was also reliable because much
of it was confirmed by the messages exchanged between
defendant and the victims. The other acts did not "stir
such passion" that the jury was unable to consider the
merits of the case. *People v Cameron*, 291 Mich App 599,
611; 806 NW2d 371 (2011). Therefore, the probative
value—showing the nature of the relationship between
defendant and the victims and assisting the jury in
assessing the credibility of the victims—substantially
outweighed any unfair prejudice. The trial court did not
abuse its discretion when it admitted the other-acts
evidence under MCL 768.27a.[9]

---

[9] Defendant's claim that the admission of other-acts evidence violates
due process is moot because the admission of the evidence was subject to
the MRE 403 balancing test. *Watkins*, 491 Mich at 456 n 2. Moreover,
defendant argues that the trial court erred by failing to instruct the jury
about other-acts evidence with CJI2d 20.28a. But this argument is
waived because defense counsel stated on the record that he had no
objection to the jury instructions. *People v Kowalski*, 489 Mich 488,
504-505; 803 NW2d 200 (2011). Furthermore, defendant has not pro-
vided any evidentiary support to overcome the presumption of strategy

V

Defendant argues that joinder of the three cases was an abuse of discretion, which affected his constitutional right to remain silent. We disagree.

Whether joinder is appropriate is a mixed question of fact and law. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). "To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *Id*. This Court reviews a trial court's factual findings for clear error and its interpretation of a court rule, which is a question of law, de novo. *Id*. However, the ultimate decision on permissive joinder of related charges lies "firmly within the discretion of trial courts." See *People v Breidenbach*, 489 Mich 1, 14; 798 NW2d 738 (2011). This Court reviews de novo questions of constitutional law. *People v Harper*, 479 Mich 599, 610; 739 NW2d 523 (2007).

MCR 6.120 provides, in relevant part:

> (B) Postcharging Permissive Joinder or Severance. On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

---

with respect to defense counsel's waiver. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

(3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

Our Supreme Court has stated that offenses are "related" for purposes of MCR 6.120(B)(1)(c) when the evidence indicates that the "defendant engaged in ongoing acts constituting parts of his overall scheme or plan . . . ." *Williams*, 483 Mich at 235.

The evidence demonstrated that defendant engaged in ongoing acts related to his scheme of preying upon young, teenage girls from his high school. In each case, defendant used text messages to communicate with the victims and encouraged them to keep their communications secret. In at least two cases, defendant requested naked photographs from the victims and, if they refused, threatened to cut off ties with them. He also used his parents' basement to isolate two of the young girls and sexually penetrate them.

The facts were not complex and presented little potential for confusion. Because defendant's actions against each victim were admissible in each case pursuant to MCL 768.27a, each victim would have been required to testify in each trial if the cases were tried separately. Joinder offered convenience to the victims, who had already suffered harassment in their communities as a result of these cases.

Finally, defendant's claim that joinder affected his constitutional right to remain silent has no merit. The trial court did not clearly err when it found incredible defendant's claim that he would have testified only in MM's case if the three cases were tried separately. Rather, because MM would have offered the same testimony in all three trials under MCL 768.27a, the trial court found that defendant would have also testified in response in all three trials.

In sum, we conclude the trial court did not err by ruling that the offenses were related and joinder was not an abuse of discretion.

VI

Defendant argues that the trial court improperly excluded as hearsay AW's testimony regarding whether the police intimidated her and forced her to testify. Defendant argues that as a result of the exclusion of the testimony, he was deprived of his rights to confront witnesses, to present a defense, and to a fair trial. We agree that the challenged testimony was improperly excluded as hearsay, but conclude that the exclusion of the testimony was harmless. Defendant preserved this claim for appeal by arguing that it was not hearsay, but defendant did not argue that the exclusion of the evidence affected his constitutional rights. Therefore, the trial court's exclusion of the evidence is reviewed for an abuse of discretion, *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012), and the constitutional claims are reviewed for plain error affecting substantial rights, *Carines*, 460 Mich at 763, 774.

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). An out-of-court statement in-

troduced to show its effect on a listener, as opposed to proving the truth of the matter asserted, does not constitute hearsay under MRE 801(c). See *Hilliard v Schmidt*, 231 Mich App 316, 318; 586 NW2d 263 (1998), overruled in part on other grounds in *Molloy v Molloy*, 247 Mich App 348, 349-350 (2001). Such statements are "not offered for a hearsay purpose because [their] value does not depend upon the truth of the statement[s]." *People v Lee*, 391 Mich 618, 642; 218 NW2d 655 (1974).

Defense counsel asked AW, "Did anyone indicate to you what would happen if you didn't come [to testify]?" When she responded affirmatively, defense counsel asked, "And that would be that you would be taken to jail?" This question was not offered to prove that AW would, in fact, go to jail if she refused to testify, but instead to prove why AW was testifying against her will. Therefore, the trial court erred by ruling that the question called for inadmissible hearsay. In any event, it was clear from other testimony in the record that AW did not want to testify and she did not want defendant to get in trouble. Defendant was not precluded from questioning AW's credibility and, in closing argument, defense counsel maintained that AW only testified against defendant because she wanted the police "off her back." Even though the trial court erred by excluding the challenged evidence, the error was harmless and did not affect defendant's substantial rights.

VII

Defendant claims that the prosecutor improperly dismissed an accosting charge after the jury was selected, questioned him about the credibility of other witnesses, commented about the credibility of witnesses in closing argument, and appealed to the jury to sympathize with the victims because of their young age.

Defendant failed to object to the prosecutor's alleged errors. Therefore, his unpreserved claims are reviewed for plain error affecting substantial rights. *People v Grant*, 445 Mich 535, 545-546, 553; 520 NW2d 123 (1994).

First, defendant argues that the stipulation by the parties to dismiss one of two counts of accosting with regard to MM—after the jury had been selected and informed of the charges—constitutes error. But when this claim was raised in the posttrial motion for a new trial, the trial court found no impropriety or bad motive in the prosecutor's decision to dismiss this charge. Whether to charge defendant was within the prosecutor's discretion. *People v Venticinque*, 459 Mich 90, 100; 586 NW2d 732 (1998). Moreover, defendant cannot establish prejudice. Even though the prosecutor dismissed the second accosting charge, the jury was nevertheless aware of defendant's repeated requests of MM for naked photographs.

Second, we agree that the prosecutor erred by asking defendant to comment on the credibility of several witnesses' testimony. The Supreme Court has held that it is improper for a prosecutor to ask a defendant to comment on the credibility of prosecution witnesses because his or her opinion "is not probative of the matter." *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). But a timely objection could have cured this error, *id.*, and in its closing instructions to the jury, the trial court advised the jury that it was the "only judge[] of the facts" and it "must decide which witnesses [to] believe." Therefore, defendant cannot establish that the prosecutor's questions affected his substantial rights.

Third, contrary to defendant's claim on appeal, the prosecutor did nothing in closing argument to suggest that he had personal knowledge that his witnesses were

worthy of belief while defendant was not. Rather, the prosecutor argued that, based on the facts already in evidence, his witnesses were credible. Likewise, the prosecutor attacked defendant's credibility on the basis of the unlikelihood that all of the witnesses had collaborated to lie. *People v Couch*, 49 Mich App 69, 72; 211 NW2d 250 (1973). Because the prosecutor did not insinuate that he had some special knowledge regarding whether defendant was testifying truthfully, but instead relied on the facts in the record, defendant cannot establish plain error. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). Moreover, even if the prosecutor relied on his improper questioning of defendant, no prejudice resulted because the trial court instructed the jury that the attorneys' closing arguments were not evidence. *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

Fourth, we conclude that the prosecutor did not improperly appeal to the jury to sympathize with the victims because of their young age. Rather, as the trial court found, age was at issue in the cases. The prosecutor was entitled to latitude in arguing his theory of the case, *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995), particularly because the victims testified that they participated in the charged conduct willingly with defendant and they did not want him to get in trouble, but the Legislature has enacted the age-based CSC and accosting statutes to protect children who are not capable of consenting to participate. See *People v Armstrong*, 490 Mich 281, 292 n 14; 806 NW2d 676 (2011), quoting *People v Cash*, 419 Mich 230, 247-248; 351 NW2d 822 (1984) (" '[T]here is no issue of consent in a statutory rape charge because a victim below the age of consent is conclusively presumed to be legally incapable of giving his or her consent to sexual intercourse.' ").

Reversal is not required because there is no basis to conclude that the prosecutor's charging decision, questioning, or argument resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Defendant argues that the cumulative effect of the alleged prosecutorial errors warrants reversal even if the individual errors do not. But only "actual errors" are aggregated when reviewing a cumulative-error argument. *Bahoda*, 448 Mich at 292 n 64. Here, only the prosecutor's cross-examination of defendant, requiring him to comment on the credibility of the prosecutor's witnesses, constituted error. Again, this error, alone, did not affect defendant's substantial rights and does not require reversal.

Defendant cannot establish that he was denied the effective assistance of counsel from the failure to object to the cross-examination of defendant regarding the credibility of the prosecutor's witnesses. Defendant failed to provide any evidentiary support to overcome the presumption of trial strategy. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Moreover, in light of the overwhelming evidence presented at trial, the failure to object was not outcome-determinative. Any objection to the remaining claims of prosecutorial error would have been futile. *Thomas*, 260 Mich App at 457.

VIII

Next, defendant argues that the trial court erred by providing an incorrect instruction for the accosting charges and that defense counsel was ineffective for failing to object to the instruction. We disagree. Defendant's claim of instructional error is waived because defense counsel stated on the record that he had no

objection to the jury instructions. *People v Kowalski,* 489 Mich 488, 504-505; 803 NW2d 200 (2011). Moreover, even if the instruction was erroneous, defendant cannot establish that defense counsel's failure to object so prejudiced him that he was deprived of a fair trial. *Grant,* 470 Mich at 485-486. MCL 750.145a provides:

> A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, or who encourages a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both.

In *Kowalski,* the trial court explained the elements of the crime of accosting a child:

> Because the Legislature used the disjunctive term "or," it is clear that there are two ways to commit the crime of accosting a minor. A defendant is guilty of accosting a minor if the prosecution proves beyond a reasonable doubt that the defendant (1) accosted, enticed, or solicited (2) a child (or an individual whom the defendant believed to be a child) (3) with the intent to induce or force that child to commit (4) a proscribed act. Alternatively, a defendant is guilty of accosting a minor if the prosecution proves beyond a reasonable doubt that the defendant (1) encouraged (2) a child (or an individual whom the defendant believed to be a child) (3) to commit (4) a proscribed act. Taken as a whole, the statute permits conviction under two alternative theories, one that pertains to certain acts and requires

a specific intent and another that pertains to encourage-
ment only and is silent with respect to *mens rea*. [*Kowalski*,
489 Mich at 499.]

The trial court in *Kowalski* instructed the jury cor-
rectly with respect to the "encourages" prong, but the
Supreme Court concluded that it erroneously omitted
the *actus reus* element of the "accosts, entices, or
solicits" prong of the offense. *Id.* at 502. In any event,
the defendant's attorney waived this error by stating
that he had no objections to the instructions. *Id.* at
503-505. The Court further held that the defendant's
attorney was not ineffective because the jury would
have convicted the defendant on the basis of the
evidence regardless of the instructional error. *Id.* at
507, 510 n 38.

Here, too, defendant alleges that the trial court
omitted the requirement that he intended to induce or
force a child to commit a proscribed act in the "accosts,
entices, or solicits" prong of the offense. The instruction
provided, in relevant part:

First, that the defendant intended to accost, entice, or
solicit a child . . . . Second, that the child was less than 16
years of age. Third, that the defendant intended to encour-
age [MM/CP] to do any of the following: A, commit an
immoral act. B, submit to an act of gross indecency. C, any
other act of depravity or delinquency.

Just like in *Kowalski*, defense counsel waived this claim
of instructional error and was not ineffective because
the jury would have convicted defendant on the basis of
the evidence regardless of the instructional error. De-
fendant testified that he texted "dirty" messages to MM
because she liked it and did not deny that he "persis-
tently" requested that MM and CP send him naked
photographs. The victims also testified that, if they did
not send the photographs, defendant would ignore them

or threaten to end their relationship—according to CP, defendant told her he would stop coaching her in track. Defendant told the victims not to reveal their relationships with him to others. Because there was overwhelming evidence that defendant intended to induce the victims to send naked photographs to him, defense counsel's failure to object to the absence of the specific-intent element of the "accosts, entices, or solicits" prong of the offense did not prejudice defendant. Defendant was not denied the effective assistance of counsel.

IX

Defendant also argues that a statement by the trial court during voir dire amounted to vouching and denied him the right to an impartial judge. We disagree.

In its voir dire instructions to the prospective jurors, the trial court explained:

> The Information - - or, actually, there's a couple of Informations in this case, because we've combined several files. But the Informations in these cases charge the defendant, Logan Gaines, with the crimes of accosting a child for an immoral purpose and criminal sexual conduct, third degree. We have three separate Informations. They have been combined because they're kind of related, as you'll learn through the course of this trial.

Defense counsel did not object to the characterization of the cases as "kind of related." A trial court is presumed to be fair and impartial. *People v Wade*, 283 Mich App 462, 470; 771 NW2d 447 (2009). Thus, defendant has a heavy presumption of impartiality to overcome. *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). Absent deep-seated favoritism or antagonism making the exercise of fair judgment impossible, judicial rulings or opinions are not valid grounds for alleging bias. *People v Jackson*, 292 Mich

App 583, 598; 808 NW2d 541 (2011). In reviewing challenged remarks, "[p]ortions of the record should not be taken out of context in order to show trial court bias against defendant; rather the record should be reviewed as a whole." *People v Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995).

Looking at the remarks as a whole, the instruction to the prospective jurors that the cases were "kind of related" was merely an attempt by the trial court to explain why three separate cases were being tried together. We concluded in Part V that the cases were in fact related to defendant's overall scheme or plan of preying on young, teenage girls. Therefore, the trial court's characterization was not improper and, contrary to defendant's claim, the statement does not indicate that he was denied an impartial judge. Because the trial court's characterization was not improper, any objection by defense counsel would have been futile. Therefore, defendant cannot establish that defense counsel was ineffective for failing to object. *Thomas*, 260 Mich App at 457.

X

Defendant argues that the trial court foreclosed the jury from requesting further clarification about the CSC-III instruction. We disagree.

During deliberations and after meeting with counsel at the bench, the trial court advised the jury:

> Ladies and gentlemen, I received your most recent note which says we need clarity on the third degree criminal sexual conduct. You have the instructions on that, so I would suggest you refer to those. And with that, I will excuse you at this time to go back and continue your deliberations.

Defendant relies on the line of cases regarding a jury's request for transcripts. That authority provides that the trial court errs by completely foreclosing the possibility of later reviewing the testimony. See *People v Holmes*, 482 Mich 1105 (2008); *People v Carter*, 462 Mich 206, 218; 612 NW2d 144 (2000); *People v Davis*, 216 Mich App 47, 57; 549 NW2d 1 (1996). Defendant's reliance on this authority is misplaced, but in any event, the trial court did not completely foreclose further inquiry. The trial court had previously indicated on the record that it would be receptive to questions and would respond appropriately. Here, the trial court referred the jury to its initial instruction on CSC-III, which defendant does not allege was improper. *People v Katt*, 248 Mich App 282, 311; 639 NW2d 815 (2001) (a trial court is not obligated to repeat previously given instructions as long as the "court's supplemental instruction was responsive to the jury's request and did not serve to mislead the jury in any manner"). Therefore, reviewing the instructions as a whole, *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234(2014), we conclude that the trial court did not plainly err. Absent any error, defense counsel was not ineffective for failing to object to the trial court's response to the jury's question. *Thomas*, 260 Mich App at 457.

XI

Defendant argues that he was denied his constitutional right to confront witnesses because two lines of inquiry were precluded: (1) the *identities* of other boys the victims sent naked photographs, and (2) whether the victims had similar sexual contact with other boys.

A primary interest secured by the Confrontation Clause is the right of cross-examination. *Delaware v Van Arsdall*, 475 US 673, 678; 106 S Ct 1431; 89 L Ed 2d

674 (1986); *Douglas v Alabama*, 380 US 415, 418; 85 S Ct 1074; 13 L Ed 2d 934 (1965). "[L]imitation[s] on cross-examination that prevent[ ] a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998). However, "[t]he right of cross-examination does not include a right to cross-examine on irrelevant issues . . . ." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). " '[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about . . . interrogation that is repetitive or only marginally relevant.' " *Id.*, quoting *Van Arsdall*, 475 US at 679.

First, defendant claimed that the victims had actually suggested sending naked photographs to him. To support this defense, testimony that the victims sent photographs to others was arguably relevant and thus permissible at trial. But the identities of the other alleged recipients would not have had any significant tendency to make the defense more or less probable. MRE 401. Absent any showing that the identities of the other alleged recipients had any particular relevance, defendant's right of confrontation was not denied when the trial court precluded testimony about the identities of other boys the victims may have sent naked photographs. *Adamski*, 198 Mich App at 138.

Second, defendant claims that evidence of the victims' sexual activity with others of the "same type" alleged to have occurred with him should have been admitted. Only MM and AW alleged that they had any sexual contact with defendant. Accordingly, the question before this Court is whether defendant should have

been allowed to offer evidence that MM and AW had similar sexual contact with other boys. MCL 750.520j provides, in relevant part:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

A "victim" is defined in MCL 750.520a(s) as "the person alleging to have been subjected to criminal sexual conduct." Here, MM testified that defendant repeatedly digitally penetrated her vagina and AW testified that she had sexual intercourse with defendant. Therefore, MM and AW were victims under MCL 750.520j because they alleged that they were subjected to criminal sexual conduct. Evidence of any instances of sexual contact they had with other boys was inadmissible.

Defendant claims evidence of the other instances of sexual contact should have been admissible because the victims were not just testifying as victims in their own cases, but were testifying as witnesses in the other cases; defendant claims that victims, not witnesses, are protected by MCL 750.520j. Defendant's argument is unpersuasive because, regardless whether MM and AW were testifying to support their own case or to provide other-acts evidence under MCL 768.27a for the other cases, they still alleged that they were "subjected to

criminal sexual conduct" and were "victims" under MCL 750.520a(s).

Defendant also claims that even if evidence of the other instances of sexual contact was inadmissible in the prosecution for CSC-III, the evidence should have been admitted in the prosecution for accosting; accosting is not protected by MCL 750.520j. Again, in his defense to the accosting charges, defendant claimed that the victims first initiated sending naked photographs to him and that they sent naked photographs to others. Whether the victims had sexual contact with others was not relevant to his defense to those charges. MRE 401. Defendant had no right of confrontation with regard to irrelevant issues. *Adamski*, 198 Mich App at 138. Moreover, even if the evidence was somehow relevant, the trial court did not clearly err by determining, in response to the motion for a new trial, that the proposed testimony raised "concerns about harassment, prejudice, confusion of the issues . . . ." Defendant was not denied his constitutional right of confrontation.

XII

Defendant argues that MCL 750.145a is unconstitutional on its face, claiming it is both vague and overbroad. We disagree. Again, this Court reviews de novo questions of constitutional law. *Harper*, 479 Mich at 610.

Again, MCL 750.145a provides:

A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of

> sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, or who encourages a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both.

There is a presumption that a statute is constitutional, and this Court will construe it this way unless its unconstitutionality is "clearly apparent." *People v Hubbard (After Remand)*, 217 Mich App 459, 483-484; 552 NW2d 493 (1996). A statute can be unconstitutionally vague if it: (1) fails to provide fair notice to the public of the proscribed conduct, (2) gives the trier of fact unstructured and unlimited discretion to determine if an offense has been committed, or (3) is overbroad and impinges on First Amendment rights. *People v Nichols*, 262 Mich App 408, 409-410; 686 NW2d 502 (2004). To evaluate a vagueness challenge, a court must examine the entire text of the statute and give the words of the statute their ordinary meanings. *People v Hrlic*, 277 Mich App 260, 263; 744 NW2d 221 (2007). Vagueness challenges must be considered in light of the facts at issue. *Id*. "A statute is unconstitutionally vague if persons of ordinary intelligence must necessarily guess at its meaning." *People v Pierce*, 272 Mich App 394, 398-399; 725 NW2d 691 (2006). A "statute is sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *People v Lueth*, 253 Mich App 670, 676; 660 NW2d 322 (2002).

The dictionary definition of "immoral" is "violating moral principles" or "licentious; lascivious." The term

"licentious" is defined as "sexually unrestrained" and the term "lascivious" means "arousing sexual desire." "Indecent" means "offending against standards of morality or propriety" and "deprave" means "to make morally bad or evil; vitiate; corrupt." Finally, "delinquency" is defined as "wrongful, illegal, or antisocial behavior." *Random House Webster's College Dictionary* (2001). Persons of ordinary intelligence need not guess at the meaning of these terms in MCL 750.145a because, when read in context with the rest of the statute, the language refers to criminal acts and is intended to protect children from being induced, forced, or encouraged to commit such acts.

Contrary to defendant's claim on appeal, read in context, the statute provides fair notice to the public of the proscribed conduct and does not give a trier of fact unstructured and unlimited discretion to determine whether an offense has been committed. No reasonable person would have to guess whether asking 13- or 14-year-old girls for photographs of them naked, particularly of their breasts and vaginas, is immoral conduct under the statute. Therefore, defendant's vagueness challenge must fail because he cannot establish that no circumstances exist under which the statute would be valid. *People v Abraham*, 256 Mich App 265, 280; 662 NW2d 836 (2003) ("The challenger to the face of a statute must establish that no circumstances exist under which it would be valid.").

A statute is overbroad when it precludes or prohibits constitutionally protected conduct in addition to conduct or behavior that it may legitimately regulate. *People v McCumby*, 130 Mich App 710, 714; 344 NW2d 338 (1983). Under the overbreadth doctrine, a defendant may "challenge the constitutionality of a statute on the basis of the hypothetical application of the

statute to third parties not before the court." *People v Rogers*, 249 Mich App 77, 95; 641 NW2d 595 (2001). Defendant argues that the statute regulates both speech and conduct. Therefore, defendant must demonstrate that the overbreadth of the statute is both real and substantial—there is a " 'realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.' " *Id.* at 96, quoting *Los Angeles City Council v Taxpayers for Vincent*, 466 US 789, 801; 104 S Ct 2118; 80 L Ed 2d 772 (1984). The statute will not be found to be facially invalid on overbreadth grounds, however, "where it has been or could be afforded a narrow and limiting construction by state courts or if the unconstitutionally overbroad part of the statute can be severed." *Rogers*, 249 Mich App at 96.

MCL 750.145a proscribes accosting or encouraging children for the purpose of inducing them to engage in criminal activity. This statute does not pose realistic dangers to First Amendment protections. Because the statute is aimed at criminal activity, it does not apply to defendant's scenarios, such as a mother's recommending an abortion to her child or skipping mass on Sundays. Therefore, MCL 750.145a is not facially overbroad. Defendant's constitutional challenge to MCL 750.145a is without merit.

XIII

Defendant claims that the cumulative effect of errors at trial deprived him of a fair trial and that reversal is required. We disagree. " 'The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of

the errors must undermine the confidence in the reliability of the verdict before a new trial is granted.' ' " People v Brown, 279 Mich App 116, 146; 755 NW2d 664 (2008), quoting *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). Because we have found support in the record for only two of defendant's claims of error, and because those errors were harmless, they neither separately nor cumulatively warrant a new trial.

## XIV

Last, defendant argues that the trial court erred by ordering him to pay restitution for the general cost of investigating and prosecuting his criminal activity. We agree. Although defendant failed to preserve this issue, this Court may review the trial court's restitution award for plain error affecting substantial rights. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009).

> Restitution is afforded both by statute and by the Michigan Constitution. Const 1963, art 1, § 24; *People v Grant*, 455 Mich 221, 229; 565 NW2d 389 (1997). The purpose of restitution is to "allow crime victims to recoup losses suffered as a result of criminal conduct." *Id.* at 230. The Crime Victim's Rights Act, MCL 780.751 *et seq.*, determines whether a sentencing court's restitution order is appropriate. *People v Crigler*, 244 Mich App 420, 423; 625 NW2d 424 (2001). [*People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003).]

Under MCL 780.766(1), victims entitled to restitution include a "governmental entity . . . that suffers *direct* physical or financial harm as a result of a crime." (Emphasis added.)

In *Crigler*, 244 Mich App at 423, this Court determined that the loss of "buy money" paid by a narcotics enforcement team for controlled substances constituted

direct financial harm resulting from the defendant's crime. *Id.* at 426-427. This Court noted:

> The loss of buy money is qualitatively unlike the expenditure of other money related to a criminal investigation, because it results directly from the crime itself; that is, the money is lost when it is exchanged for the controlled substance. The payment of salaries and overtime pay to the investigators, the purchase of surveillance equipment, the purchase and maintenance of vehicles, and other similar expenditures are "costs of investigation" unrelated to a particular defendant's criminal transaction. These expenditures would occur whether or not a particular defendant was found to be engaged in the sale of controlled substances. [*Id.* at 427.]

In *Newton*, this Court relied on the dicta in *Crigler* that the payment of the costs of the investigation a crime, such as salaries and equipment, would occur regardless whether a particular defendant committed the crime and therefore could not be recouped through restitution. *Newton*, 257 Mich App at 69-70. Therefore, the *Newton* panel determined that the $2,500 the defendant was ordered to pay the sheriff's department as reimbursement for its cost in the investigation of the defendant was plain error affecting the defendant's substantial rights. *Id.* at 70.

Here, the trial court ordered defendant to pay restitution for officer investigation (24 hours for $864), a forensic analyst (102 hours for $3,672), and discs ($6.64). These costs are comparable to costs of the investigation in *Newton* and distinguishable from the direct cost of the buy money paid in *Crigler*.[10] There-

---

[10] We reject the prosecutor's argument that the trial court could have alternatively ordered the costs to be repaid under the general taxing authority of MCL 769.34(6), which provides, "As part of the sentence, the court may also order the defendant to pay any combination of a fine, costs, or applicable assessments. The court shall order payment of

fore, the trial court erred by ordering restitution and we vacate that portion of the judgment of sentence ordering $4,542.64 in restitution.

XV

We affirm defendant's convictions, vacate the order of restitution, and remand to the trial court for entry of an amended judgment of sentence consistent with this opinion. We do not retain jurisdiction.

FITZGERALD and MARKEY, JJ., concurred with WILDER, P.J.

---

restitution as provided by law." Our Michigan Supreme Court recently explained, "MCL 769.34(6) allows courts to impose only those costs or fines that the Legislature has separately authorized by statute." *People v Cunningham*, 496 Mich 145, 158 n 11; 852 NW2d 118 (2014).