# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 22, 2015

Plaintiff-Appellee,

v

No. 321480
Wayne Circuit Court
LC No. 13-010259-FC

DERRICK STACY CHAPPEL,

Defendant-Appellant.

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

Defendant was convicted of assault with intent to commit murder, MCL 750.83, possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm) (second offense), MCL 750.227b. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to concurrent terms of 40 to 80 years' imprisonment for the assault with intent to commit murder and felon-in-possession convictions, and five years' imprisonment for the felony-firearm (second offense) conviction. On appeal, defendant challenges his convictions and his sentence for the felon-in-possession conviction. We affirm.

This case arises from an argument between defendant and a neighbor, Ronald Simmons, at Simmons's house in Detroit, Michigan. Defendant shot the unarmed Simmons several times at close range while numerous volunteers from the Michigan Urban Farming Initiative (MUFI) worked in a community garden across the street. Defendant asked the court to appoint different defense counsel for him during a pretrial hearing, and the trial court denied his request.

## I. DEPARTURE FROM SENTENCING GUIDELINES

Defendant first contends that his sentence for felon-in-possession posed a significant departure from the proper guideline sentencing range, that the trial court failed to provide substantial and compelling reasons for the departure, that the departure resulted in a sentence that was disproportionate to defendant's offense, and that the conviction was not subject to sentence enhancement under the habitual offender statute because it was not a serious offense. We disagree.

We review for an abuse of discretion a trial court's determination that "objective and verifiable factors present in a particular case constitute substantial and compelling reasons to

-1-

depart from the statutory minimum sentence[.]" *People v Lopez*, 305 Mich App 686, 689; 854 NW2d 205 (2014) (citation omitted). "The interpretation and application of the legislative sentencing guidelines . . . involve legal questions that this Court reviews de novo." *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009).

MCL 777.14, which governs presentence investigation reports, provides, in part:

(2) A presentence investigation report prepared under subsection (1) shall include all of the following:

\* \* \*

(e) For a person to be sentenced under the sentencing guidelines set forth in chapter XVII, all of the following:

(i) For each conviction for which a *consecutive* sentence is authorized or required, the sentence grid in part 6 of chapter XVII that contains the recommended minimum sentence range.

(ii) Unless otherwise provided in subparagraph (i), for each crime having the *highest crime class*, the sentence grid in part 6 of chapter XVII that contains the recommended minimum sentence range.

(iii) Unless otherwise provided in subparagraph (i), the computation that determines the recommended minimum sentence range for the crime having the *highest crime class*. [Emphasis added.]

Thus, when sentencing a criminal defendant under the sentencing guidelines, a trial court employs a presentence investigation report containing a guideline sentencing range only for the most serious offense unless the court imposes consecutive sentences. MCL 777.14. Extending this logic, we have specifically held that, so long as the trial court properly scores the guidelines for the conviction with the highest crime classification, it need not independently score the guidelines for each of a defendant's concurrent convictions. See *People v Mack*, 265 Mich App 122, 126-130; 695 NW2d 342 (2005).

We recently addressed this very issue in a nearly identical context in *Lopez*. There, the defendant was found guilty of armed robbery, assault with intent to rob while armed, felony-firearm, felon-in-possession, and carrying a concealed weapon. *Lopez*, 305 Mich App at 688. The trial court sentenced the defendant, as a fourth habitual offender, to concurrent prison terms of 35 to 55 years on all counts but the felony-firearm. *Id.* The defendant appealed, arguing that the trial court erred in failing to individually score the sentencing guidelines for each of his convictions and by failing to sentence him according to the applicable guidelines sentencing range for each conviction. *Id.*

We affirmed the defendant's sentences. *Lopez*, 305 Mich App at 689. Hewing to the reasoning in *Mack* and the plain language of MCL 777.14, we stated that "because the sentences for defendant's lower-crime-class offenses were to be served concurrently with the highest-class-

felony sentence, the [lower-class-offense] guidelines did not need to be scored and there was no departure." *Lopez,* 305 Mich App at 692.

In this case, as in *Lopez,* the trial court properly scored defendant's most serious offense, assault with intent to commit murder. See MCL 777.16d (providing that assault with intent to commit murder is a Class A offense for sentencing purposes); MCL 777.16m (listing felon-in-possession as a Class E offense); MCL 777.62 (for defendant's appropriate sentencing grid). As in *Lopez,* the trial court in this case sentenced defendant to concurrent prison terms, with the exception of the sentence for his felony-firearm conviction. Defendant in this case does not contend that the trial court erred in calculating his sentence for assault with intent to commit murder, another similarity to the defendant in *Lopez.* Accordingly, our conclusion in *Lopez* is applicable here: the trial court did not need to score defendant's felon-in-possession conviction because the court correctly sentenced him for his highest-class offense and because the court sentenced him to concurrent prison terms. See *Lopez,* 305 Mich App at 692.

Although the foregoing analysis dispenses with defendant's main argument, we will also address defendant's additional contention that his felon-in-possession conviction was not subject to enhancement under the habitual offender statute because it was not a serious offense. MCL 769.12 governs sentencing enhancement for a criminal defendant with three or more prior felony convictions. It provides, in part:

> (1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:
>
> > (a) If the subsequent felony is a *serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies*, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.
> >
> > (b) If the subsequent felony is *punishable upon a first conviction by imprisonment for a maximum term of 5 years or more* or for life, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for life or for a lesser term. [Emphasis added.]

By the plain language of the statute, then, a defendant with three or more prior felony convictions who commits a subsequent felony faces a number of different outcomes, depending on the nature of the subsequent felony. MCL 769.12. If the subsequent felony is a serious crime and one of the defendant's prior felonies was an offense that is listed in the statute, the defendant is subject to a 25-year minimum sentence for the subsequent felony. MCL 769.12(1)(a). A second outcome, however, provides that the trial court may sentence the defendant to life or a

lesser term if the subsequent felony was punishable by a maximum term of five years or more. MCL 769.12(1)(b). Thus, contrary to defendant's assertion, his felon-in-possession conviction need not have been classified as a serious crime in order to qualify for habitual offender enhancement. See MCL 769.12. And because felon-in-possession is punishable by a maximum term of five years, the court was free under the habitual offender statute to sentence defendant to life or a lesser term for his felon-in-possession conviction. See MCL 750.224f(5); MCL 769.12(1)(b).[1]

## II. REFUSAL TO APPOINT SUBSTITUTE COUNSEL

In a Standard 4 brief, defendant next contends that there was a breakdown in the attorney-client relationship with defense counsel, that he and defense counsel experienced an irreconcilable difference of opinion, and that defense counsel failed to work diligently on his behalf in a number of ways. Defendant further contends that the trial court failed to adequately inquire into this issue after he requested a new attorney at his pretrial hearing and that, as a result, the court abused its discretion by denying his request. We disagree.

We review for an abuse of discretion a trial court's decision regarding substitution of counsel. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. (citation and quotation marks omitted).

"An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001) (citation omitted). "Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Id*. A genuine disagreement over the use of a substantial defense or a fundamental trial tactic is good cause. *Id*. Defense counsel's inadequacy, lack of diligence, or disinterest may also establish good cause, *People v Ginther*, 390 Mich 436, 441-442; 212 NW2d 922 (1973), as may the " 'destruction of communication and a breakdown in the attorney-client relationship,' " *People v McFall*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (citation omitted); slip op at 3.

Conversely, a defendant does not establish good cause by expressing general unhappiness with his or her representation or by making a mere allegation, unsupported by a substantial reason, that he or she lacks confidence in the appointed attorney. *Strickland*, 293 Mich App at 398. A determination of whether good cause existed depends on the facts of each case. *People v Buie*, 298 Mich App 50, 67; 825 NW2d 361 (2012). If a defendant asserts that good cause exists to justify substitution of counsel, "the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings on the record." *Strickland*, 293 Mich App

---

[1] We note that our analysis remains the same in light of *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015), since defendant does not argue that the trial court improperly engaged in judicial fact-finding during sentencing, and the trial court was not required to score the felon-in-possession conviction, as discussed above.

at 397 (citation and quotation marks omitted). Even if the court fails to consider the defendant's allegation, however, we will not set aside the defendant's conviction unless the record demonstrates that defense counsel was actually inattentive to his or her responsibilities. *Buie*, 298 Mich App at 67.

In this case, defendant requested a new attorney at his pretrial hearing because (1) "only one side [had] been told," (2) defense counsel purportedly had a conflict of interest, and (3) defense counsel had failed to discuss his potential sentence with him, fully investigate the case, communicate with him, and talk to his witnesses. Defendant's first ground, that his story had not been told, does not constitute good cause, particularly because it would have been pointless and counterproductive for defense counsel to lay out her theory of the case and strategy before trial. See *McFall*, ___ Mich App at ___; slip op at 3; *Traylor*, 245 Mich App at 462; *Ginther*, 390 Mich at 441-442.

The trial judge asked defendant about his second ground, defense counsel's conflict of interest, and defendant only replied that he believed she did not have his best interests at heart. A conflict of interest arises when a "real or seeming incompatibility" exists between the interests of a lawyer's two clients or between a lawyer's private interests and public or fiduciary duties. *Black's Law Dictionary* (10th ed). Defendant provided no evidence that either condition existed in association with defense counsel's representation. Thus, defense counsel's "conflict of interest" also failed to establish good cause for substitution. See *McFall*, ___ Mich App at ___; slip op at 3; *Traylor*, 245 Mich App at 462; *Ginther*, 390 Mich at 441-442.

Defendant's allegations that defense counsel failed to communicate with him, investigate his case, and talk to his witnesses could potentially establish good cause, but the record does not support his allegations. The trial court appointed defense counsel on November 27, 2013. Between that date and the February 20, 2014 pretrial hearing at which defendant requested new counsel, defense counsel was in court with defendant on two other occasions. On both occasions, she argued strenuously for a reduction in defendant's bond. At the December 11, 2013 pretrial, defense counsel also told the court that defendant's girlfriend "[had] been in contact with me concerning his case." Defendant did not express any issues with defense counsel's performance on either occasion. During the February 20, 2014 pretrial hearing, defense counsel told the trial court,

> I have not been to the jail to speak to him there yet. We're still a month out from his trial. I have gone over the materials. I am aware of the charges against him. I'm aware of the allegations and the witnesses. I'm aware of his feeling on it, but because I have not gone to the jail and actually sat down with him there he does not feel I am trying to proceed with his case.

Contrary to defendant's assertions, then, the record indicates that defense counsel was working diligently on his case—even if she was not doing so in the manner or according to the timeline that he would have preferred. There was, therefore, no real factual dispute about defendant's claim of good cause for substitution, and the trial judge was not required to take testimony regarding the allegations or state his findings on the record. See *Strickland*, 293 Mich App at 397. Defendant also failed to note the existence of a breakdown in the attorney-client relationship or any disagreements over the use of a substantial defense or a fundamental trial

-5-

tactic. See *McFall*, ___ Mich App at ___; slip op at 3; *Traylor*, 245 Mich App at 462. Accordingly, defendant failed to establish good cause to justify substitution of counsel, and the court did not abuse its discretion in denying defendant's request because the result did not fall outside the range of reasonable or principled outcomes. See *Strickland*, 293 Mich App at 397.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant contends in his Standard 4 brief that defense counsel's failure to sufficiently investigate the case against him, meet with and call defense witnesses to testify, investigate the crime scene, visit defendant to discuss the case, and call defendant to testify at trial all fell below an objective standard of reasonableness and that he was thereby prejudiced. We disagree.

To preserve a claim of ineffective assistance of trial counsel for appellate review, a defendant must move for a new trial or for a *Ginther* hearing. *Lopez*, 305 Mich App at 693. Defendant did not move for a new trial or a *Ginther* hearing in the trial court. Therefore, this issue is unpreserved for appellate review. See *id*.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). "This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *Id*. A finding is clearly erroneous if " 'the reviewing court is left with a definite and firm conviction that a mistake has been made.' " *Lopez*, 305 Mich App at 693 (citation omitted). We review an unpreserved claim of ineffective assistance of counsel for errors apparent on the record. *Id.*

"To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). To show prejudice, a defendant "must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different." *People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014) (citation and quotation marks omitted). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation and quotation marks omitted). More specifically, there is a strong presumption that defense counsel employed effective trial strategy, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (citation omitted), and we "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence," *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Importantly, too, the "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

-6-

## A. DEFENSE WITNESSES

Counsel's decision regarding whether to call a witness is presumed to be a matter of trial strategy. *People v Herron*, 303 Mich App 392, 396; 845 NW2d 533 (2013), lv held in abeyance 846 NW2d 924 (2014). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Payne*, 285 Mich App at 190 (citation and quotation marks omitted). A substantial defense is one that could have made a difference in the trial's outcome. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

In his Standard 4 brief, defendant claims that he informed defense counsel of two witnesses who were ready and able to assist with the defense: his neighbor, Jerome Jackson, and his girlfriend, Debra Turner. At the outset, we note that the lower court record is devoid of any reference to Turner, and that Jackson was mentioned fleetingly, anonymously, and never as a potential witness. Logically, the record also lacks indicia regarding how their testimony may have helped defendant. Accordingly, defendant has failed to establish the factual predicate for his claim because our review is restricted to errors apparent on the record. See *Lopez*, 305 Mich App at 693; *Hoag*, 460 Mich at 6.

Additionally, while we need not consider facts that are raised for the first time in defendant's Standard 4 brief, defendant overestimates the utility of Jackson's and Turner's potential testimony. Defendant asserts that Jackson would have testified that Simmons was the aggressor in the altercation, that Simmons had a weapon, that Jackson—not Simmons—was responsible for cleaning up defendant's yard, and that Simmons initially called defendant over to his house on the day of the shooting. Only the former two assertions were relevant to whether defendant committed the offenses with which he was charged, although the latter two could arguably have been used to impeach Simmons's testimony to some minimal extent. Furthermore, Jackson was defendant's friend and did not give a statement to police at the scene, making it highly unlikely that the jury would have credited his contradictory testimony over that of Simmons and the numerous disinterested MUFI volunteers. For Turner's part, defendant asserts that she would have testified that he paid Simmons in full for both jobs and that he had given Simmons some scrap to exchange for money. Neither fact was relevant to whether defendant shot Simmons or possessed a firearm. Defense counsel's decision not to call Jackson and Turner as witnesses was sound trial strategy, as their testimony would have either been irrelevant or highly suspect. See *Unger*, 278 Mich App at 242-243. Defense counsel's strategy in this regard did not lead to defendant's acquittal, but it was, nevertheless, sound. See *Matuszak*, 263 Mich App at 61. Defendant therefore fails to establish a reasonable probability that the outcome of the case would have been different had Jackson and Turner testified, and thus, fails to show that defense counsel's performance at trial prejudiced him. See *Gaines*, 306 Mich App at 300.

## B. THE CRIME SCENE

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *Chapo*, 283 Mich App at 371. As noted earlier, a substantial defense is one that could have made a difference in the trial's outcome. *Id*. "Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v McGhee*, 268 Mich App

600, 626; 709 NW2d 595 (2005). Provided that defense counsel makes a complete investigation, however, the decision regarding what evidence to present is a matter of trial strategy. *Wiggins v Smith*, 539 US 510, 521-522; 123 S Ct 2527; 156 L Ed 2d 471 (2003).

Defendant contends that he asked defense counsel to "go out to the scene of the crime so that she could witness and introduce to the jury" that the physical layout of the scene made the MUFI volunteers' testimony incredible. Once again, the record does not support defendant's contention, meaning that he has failed to establish the factual predicate for this claim. See *Lopez*, 305 Mich App at 693; *Hoag*, 460 Mich at 6. Furthermore, testimony from the MUFI volunteers established that they saw the shooting clearly, if at a distance. Banika Jones testified that the sun was still up, that she could readily identify Simmons and defendant, that she heard some of the individual words they said during their argument, and that she had a clear view of the incident with no obstructions. Maria Agnes Serrano, while she did not know Simmons or defendant, described what both men did during the incident, provided a basic description of defendant, and recognized him by his clothing when he rode his bicycle past the MUFI house. Amy Swift also did not know either man, but she was able to describe defendant's clothing, the fact that he used a handgun, and even the way he held the gun. The record simply does not support defendant's claim that the dimensions of the crime scene rendered it impossible for the witnesses to identify him or provide an account of the shooting.

Furthermore, assuming from the plain language of defendant's Standard 4 brief that he actually intended defense counsel to testify regarding her findings at the crime scene, the Michigan Rules of Professional Conduct would have precluded such testimony. See MRPC 3.7 (providing that a lawyer may not represent a client and also appear as a witness in the same proceeding unless the testimony relates to an uncontested issue or to the nature and value of legal services rendered). Nor does defendant provide caselaw suggesting that defense counsel is required to perform, like a latter-day Sherlock Holmes, an independent physical investigation at the crime scene. Accordingly, defendant has failed to establish that defense counsel's performance in this regard fell below an objectively reasonable standard or prejudiced him at trial. See *Gaines*, 306 Mich App at 300; *Walker*, 497 Mich at 895.

## C. CONTACT AT THE JAIL

In the "Statement of Questions Presented" section of his Standard 4 brief, defendant claims that defense counsel provided ineffective assistance by failing to visit him to discuss the case, but he neglects to provide caselaw or an argument in his brief. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Payne*, 285 Mich App at 196. Defendant has, therefore, abandoned the issue. See *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001).

Assuming that defendant had not abandoned the issue, however, the record indicates that he had numerous opportunities to discuss the case with defense counsel face to face. The two met—and, one assumes, spoke about the case—at the calendar conference on November 27, 2013; the pretrial hearing on December 11, 2013; the final conference on February 3, 2014; and the pretrial hearing on February 20, 2014. In that last pretrial hearing, defense counsel admitted that she had not yet visited the jail, but the fact that defendant raised no complaints on that score

-8-

at his trial or sentencing suggests that she visited him there before trial. Furthermore, defendant's own Standard 4 brief concedes that defense counsel did indeed visit him there. The brief and defendant's attached self-serving affidavit complain more of the frequency and duration of defense counsel's visits than a complete lack thereof, and defendant fails to provide caselaw to support his implicit contention that three face-to-face meetings, albeit brief ones, indicate objectively unreasonable performance. Defendant also fails to explain how longer or more frequent visits from defense counsel might have provided a different outcome at trial. Accordingly, even if defendant had not already abandoned the issue, he has failed to establish ineffective assistance of counsel on this point. See *Gaines*, 306 Mich App at 300; *Walker*, 497 Mich at 895.

## D. DECISION NOT TO TESTIFY

Both the United States Constitution and the Michigan Constitution confer upon a criminal defendant the right to testify at trial. US Const, Am XIV; Const 1963, art 1, §§ 17, 20. But "[a]lthough counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). If a defendant intentionally relinquishes or abandons the right to testify, the right will be deemed waived. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

We note at the outset that defendant's affidavit is the only evidence he offers to support his claim that defense counsel provided ineffective assistance by advising him not to testify. As discussed earlier, however, our review is limited to the existing lower court record. See *Lopez*, 305 Mich App at 693; *People v Watkins*, 247 Mich App 14, 31; 634 NW2d 370 (2001) (refusing to consider the defendant's affidavit in support of an ineffective assistance of counsel claim because it was not part of the lower court record), aff'd but criticized on other grounds by 468 Mich 233 (2003). At trial, the following exchange took place between defendant, defense counsel, and the trial judge after the prosecution's case-in-chief—and after the judge called a brief recess for defense counsel to confer with defendant:

> [*Defense Counsel*]: I have discussed with my client you know our defense and our strategy in this case. We have talked about possible witnesses. I have explained to him his right to testify and not to testify, and after discussing this *my client has decided* that he wishes to exercise his right to remain silent and not testify. I haven't promised him anything, I haven't guaranteed him anything, I have not threatened him. And, also, that in discussing the way the case has gone in we have decided not to put on any witnesses. Stand up.

> * * *

> *The Court*: And Mr. Chappel, do you understand that you have a [c]onstitutional [r]ight in this case to testify, do you understand that?

> [*Defendant*]: Yes.

> *The Court*: And you, also, have a [c]onstitutional [r]ight to remain silent. Do you understand that, sir?

[*Defendant*]: Yes.

*The Court*: It's my understanding from your attorney that you wish to assert your [c]onstitutional [r]ight to remain silent and to give up your right to testify in this case. Is that correct, sir?

[*Defendant*]: Yes. [Emphasis added.]

The trial court conducted further voir dire of defendant on this point, and defendant testified that no one had forced him to waive his right to testify; no one had threatened him or promised him anything; he was "knowingly, intelligently, voluntarily, understandably, and accurately" waiving his right to testify; and waiving the right was his own choice. Thus, rather than supporting defendant's claim that defense counsel persuaded him not to testify or prevented him from doing so, the record exhaustively establishes that defendant was apprised of his right to testify and voluntarily waived that right. See *Carter*, 462 Mich at 215. Accordingly, defendant fails to establish the factual predicate for his claim and cannot demonstrate that defense counsel's performance failed to meet an objectively reasonable standard. See *Walker*, 497 Mich at 895; *Hoag*, 460 Mich at 6.

Moreover, we simply cannot determine what effect, if any, defendant's testimony may have had on the trial because our review is limited to the lower court record and because defendant did not testify. See *Lopez*, 305 Mich App at 693. Defendant therefore fails to establish a reasonable probability that the outcome of the case would have been different had he testified, and thus, cannot demonstrate that defense counsel's performance at trial prejudiced him. See *Gaines*, 306 Mich App at 300.

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Jane M. Beckering