# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RONNIE RON ECHOLS,

        Defendant-Appellant.

<div style="float:right">

UNPUBLISHED
February 13, 2018

No. 335067
Wayne Circuit Court
LC No. 16-003011-01-FC

</div>

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RONNIE RON ECHOLS,

        Defendant-Appellant.

<div style="float:right">

No. 335069
Wayne Circuit Court
LC No. 16-003012-01-FC

</div>

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RONNIE RON ECHOLS,

        Defendant-Appellant.

<div style="float:right">

No. 335178
Wayne Circuit Court
LC No. 16-003010-01-FC

</div>

---

Before: SAWYER, P.J., and MURRAY and STEPHENS, JJ.

PER CURIAM.

-1-

These consolidated appeals[1] involve three cases joined for trial in the lower court.[2] In Docket No. 335067, defendant appeals as of right his jury trial convictions of carjacking, MCL 750.529a, armed robbery, MCL 750.529, and receiving or concealing stolen property – motor vehicle, MCL 750.535(7). He was sentenced to 25 to 50 years' imprisonment for the carjacking conviction, to be served consecutively to 25 to 50 years' imprisonment for the armed robbery conviction, and 2 ½ to 50 years' imprisonment for the concealing stolen property conviction. In Docket No. 335069, defendant appeals as of right his jury trial conviction of armed robbery. He was sentenced on August 23, 2016, to 20 to 50 years' imprisonment for the conviction. Finally, in Docket No. 335178, defendant appeals as of right his jury trial conviction of armed robbery. He was sentenced to 25 to 50 years' imprisonment for the conviction. For the reasons stated herein, we affirm.

ANALYSIS

Appellate counsel for defendant filed a brief on appeal, and defendant filed a Standard 4 brief raising a number of issues on his own behalf. We address all arguments below.

I. JOINDER

Defendant first asserts that the trial court improperly joined the three cases for trial because the offenses in each were not sufficiently related to justify joinder under MCR 6.120. Further, he argues that the trial court violated his due process rights by admitting other-acts evidence pursuant to MRE 404(b).

Generally, to preserve an issue for appellate review, it must be raised, addressed, and decided by the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). And to preserve a claim of evidentiary error specifically, "a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1).

Prior to trial, the prosecution filed a notice of intent to introduce evidence for all three cases at each of defendant's trials pursuant to MRE 404(b). The record contains no response from defendant, and at the final conference during which the trial court joined the cases for trial and concluded that evidence for each case would have also been admitted pursuant to MRE

---

[1] *People v Echols*, unpublished order of the Court of Appeals, entered October 19, 2016 (Docket Nos. 335067; 335069; 335178).

[2] The three lower court cases against defendant arose from the robberies of three individuals in Detroit. Defendant was charged in separate informations for each. Prior to trial, the prosecution filed a notice of intent to introduce evidence of all three robberies at all three trials pursuant to MRE 404(b). Ultimately, the trial court granted the prosecution's request and joined the cases for trial.

404(b), defense counsel failed to object on joinder or evidentiary grounds. Accordingly, defendant failed to preserve these issues for appellate review.

When preserved for appellate review:

Whether joinder is appropriate is a mixed question of fact and law. To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute related offenses for which joinder is appropriate. This Court reviews a trial court's factual findings for clear error and its interpretation of a court rule, which is a question of law, de novo. However, the ultimate decision on permissive joinder of related charges lies firmly within the discretion of the trial courts. [*People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014) (quotation marks and citations omitted).]

And for preserved evidentiary issues, we review the trial court's decision to admit evidence for an abuse of discretion, and review de novo "preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).

However, unpreserved issues are reviewed for plain error affecting substantial rights. *Id.*; MRE 103(d); *People v Carines*, 460 Mich 750, 763-765; 597 NW2d 130 (1999). A plain error affects substantial rights if it would have altered the outcome of the lower-court proceedings. *People v Jones*, 468 Mich 345, 356; 662 NW2d 376 (2003). Reversal is not warranted unless "the plain, unpreserved error resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id.* at 355.

The trial court's decision to join for trial defendant's three cases did not amount to plain error affecting defendant's substantial rights. MCR 6.120 permits the joinder of offenses charged in two or more informations against a single defendant when the offenses are sufficiently related. MCR 6.120(B)(1). Offenses are related if they are based on the same conduct or transaction, a series of connected acts, or a series of acts constituting parts of a single scheme or plan. *Id.*; *Gaines*, 306 Mich App at 304-305. "Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial." MCR 6.120(B)(2); *Gaines*, 306 Mich App at 304-305.

The record supports the trial court's determination that the offenses charged were sufficiently related to justify joinder because they were based on a "series of connected acts constituting parts of the same, single scheme." Defendant and Clay engaged in a scheme to make money by robbing individuals of their belongings using weapons and the threat of violence, and each of the actions they took furthered this goal. From Dorel Gavrilovici, they stole a car which they then used to corner two more individuals over the span of a few hours in Detroit. They also used a weapon, either a gun or a hammer, in each of the robberies to threaten or inflict injury, and all of the victims reported the theft of personal items including cash, cell phones, and insurance cards. Moreover, contrary to defendant's argument that joinder of the

offenses likely confused the jury, the evidence presented at trial cannot be considered at all complex. Each of the three victims testified clearly regarding the robberies committed against them, and in chronological order. And the jury was instructed to consider each offense separately, in light of all of the evidence admitted at trial. Thus, joinder was appropriate.

However, even if the trial court did err by joining defendant's cases for trial, the error did not affect the outcome of the lower court proceedings. First, as the trial court correctly determined, evidence of each incident would have been admissible in the other trials pursuant to MRE 404(b), as evidence from all three crimes demonstrated a common plan or scheme.[3] See *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009) (reasoning that any joinder error was harmless because "the evidence of each charged offense could have been introduced in the other trial under MRE 404(b)"). Second, any joinder error did not affect the outcome of trial because each victim clearly described the perpetrators' actions, and confidently identified defendant. And, as mentioned above, defendant admitted to being present at each robbery.

## II. RIGHT OF CONFRONTATION

Defendant next argues that the trial court violated his right of confrontation by admitting Detective Christopher Staton and Officer Shawn Schmelter's testimony regarding anonymous tips they received after gas station surveillance video was supplied to the media.

Again, "[t]o preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *Aldrich*, 246 Mich App at 113, citing MRE 103(a)(1); *People v Henry (After Remand)*, 305 Mich App 127, 152; 854 NW2d 114 (2014). Although defendant fails to identify the specific testimony with which he takes issue, defense counsel did not object to either policeman's testimony regarding anonymous tips.

Generally, "[w]hether [a] defendant was denied his right of confrontation involves a question of constitutional law that we review de novo." *Henry*, 305 Mich App at 152. However, this Court reviews "unpreserved evidentiary error, including alleged constitutional error, for plain error." *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003).

---

[3] The prosecution's notice of intent to introduce other-acts evidence stated that evidence of all three offenses should be admitted to demonstrate a common plan and intent. And although, as defendant asserts, the trial court appeared to simply list, with no explanation, several of the proper purposes provided in MRE 404(b) when it concluded that other-acts evidence would have been admissible had the offenses not been joined for trial, it did state its reasoning with regard to common plan. Specifically, it said: "All three of these alleged incidents involved the same defendants, occurred within a six-hour period, occurred within miles of each other, involved a red Ford Mustang or what's been described as a red sports car. All involved armed robberies for money and cell phones, and all involved threats to shoot or harm the victims with guns or a hammer."

The testimony from Detective Staton and Officer Schmelter regarding anonymous tips did not violate defendant's right of confrontation. Thus, defense counsel was not ineffective for failing to object.

"A defendant has the right to be confronted with the witnesses against him or her." *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007), citing US Const, Am VI, Const 1963, art 1, § 20, and *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

> The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. A statement by a confidential informant to the authorities generally constitutes a testimonial statement. However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted.[4] Thus, a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause. Specifically, a statement offered to show why police officers acted as they did is not hearsay. [*Id*. at 10-11 (citations omitted).]

In *Chambers*, the police released still photographs from a surveillance video to the local television stations, and at trial, the lead detective testified that he received a call from an FBI agent whose confidential informant saw the photographs and recognized the man as the defendant. *Id*. at 4, 10. But the Court held "that there was no Confrontation Clause violation because the out-of-court testimonial statement by the confidential informant was not admitted to establish or prove the truth of the matter asserted." *Id*. at 2-3. Instead, as the Court reasoned, the statement was offered to establish why the police conducted surveillance at the defendant's home and how they effectuated the defendant's arrest. *Id*. at 11.

The same is true here. On direct examination, Detective Station testified as follows:

> *Q*. And, Detective, did you have an opportunity or in the course of your investigation to determine who those two men were in that red Mustang we saw the video of?
>
> *A*. Yes. We aired some of the footage on local media.
>
> *Q*. In the course of your investigation?
>
> *A*. Yes.

---

[4] See MRE 801(c), which provides: " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

*Q.* Okay. And what were the identities of those two men?

*A.* We received some tips it was -- the names that we were given?

*Q.* Yeah.

*A.* Oh, one subject was, I believe, Charles Clay. The other subject was Ronnie Echols.

Officer Schmelter testified that the gas station surveillance video was released to the media, and that the police created photographic lineups as a result of the tips they received identifying defendant and Clay. Considered in context the testimony did not violate defendant's right of confrontation because it was not offered to establish that defendant was one of the men in the video or that he committed the robberies. Rather, the testimony was offered to explain why the police investigation led to defendant, and why they included photographs of defendant and Clay in the lineups shown to Gavrilovici, Elgina Hughes, and Ronda McCalip.

Additionally, even if the testimony violated defendant's right of confrontation, no plain error occurred. All three victims identified defendant in court, and denied seeing the surveillance video before choosing defendant from photographic lineups. The jury viewed the video itself, and defendant admitted to being at all three robberies and at the gas station in the red Mustang. Thus, any error does not require reversal, and any objection by defense counsel would have been futile. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defense counsel raises a number of ineffective assistance of counsel arguments. Each argument lacks merit.

To preserve an ineffective assistance of counsel argument, a defendant must file a motion for a new trial or *Ginther*[5] hearing in the trial court to establish evidence supporting the argument. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Despite listing his grievances against defense counsel at sentencing, defendant failed to request a new trial or a *Ginther* hearing in the trial court. And although he raised some of these arguments in his motion to remand, this Court denied that motion.[6] Accordingly, defendant failed to preserve these arguments for appellate review.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review a trial court's findings of fact for clear error, and questions of constitutional law de novo. *Id.*

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] *People v Echols*, unpublished order of the Court of Appeals, entered July 10, 2017 (Docket Nos. 335067; 335069; 335178).

A defendant must establish a factual predicate for his arguments. *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999). But when a defendant fails to preserve his arguments, our review is limited to the facts available in the appellate record. See *Sabin*, 242 Mich App at 658-659. "If the appellate record does not support [his] assertions, he has waived the issue." *Id*. at 659.

To evaluate the effective assistance of counsel, we use the standard established in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *Hoag*, 460 Mich at 5-6. For a successful ineffective assistance of counsel argument, the defendant must show: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The effective assistance of counsel is presumed. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). Further, a defendant must overcome the presumption that defense counsel's alleged actions were simply sound trial strategy. *Trakhtenberg*, 493 Mich at 52.

Defendant's first ineffective assistance of counsel argument focuses on defense counsel's alleged failure to properly investigate evidence he believes would have benefitted his case. But he fails to establish a factual predicate in support. With regard to his assertion that defense counsel performed deficiently by failing to file a discovery motion, defendant does not identify what newly-discovered evidence would have been uncovered through such a motion, or how he was prejudiced as a result. And the record is devoid of any support for his contention that with adequate investigation, defense counsel would have learned of a phone call in which one of the victims admitted to police interference with the victims' identification of defendant. To the contrary, at trial, Gavrilovici, Hughes, and McCalip all denied that police officers influenced their photographic lineup choices. Further, defendant admitted to being at each of the robberies, so his identification was not at issue in any way.

Defendant's second and third ineffective assistance of counsel arguments fail for similar reasons. Defendant asserts that defense counsel should have called Kimberly Murry to testify because she heard Clay admit that, although defendant was present, he committed the robberies himself, and Ronald Smith because he received a phone call from Hughes "asking him for money for a stolen cellphone that she claimed was stolen from her by his sons friend and she'll drop the fake robbery charges." Further, he asserts that conflict with defense counsel prejudiced his defense. But, as plagued his first ineffective assistance argument, the record is devoid of any evidence regarding what Murry and Smith would have testified to, see *People v Putman*, 309 Mich App 240, 248-249; 870 NW2d 593 (2015), or any serious conflict with defense counsel. And defendant failed to provide record citations in support.

Moreover, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy[.]" *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation marks and citations omitted; first alteration in original). Failing to call a witness to testify only amounts to ineffective assistance if it deprives a defendant of a substantial defense. *Id*. "A substantial defense is one that might have made a difference in the outcome of trial." *People v Kelly*, 186 Mich App 524, 526-527; 465 NW2d 569 (1990). We fail to see how the purported testimony would have affected the outcome of the trial. The victims testified to defendant's sometimes limited role in the robberies, but the jury, with

-7-

instructions on aiding and abetting, still voted to convict. Further, part of defense counsel's strategy was to assert that defendant played a limited role in the robberies, which this Court should not "second-guess with the benefit of hindsight." *Dixon*, 263 Mich App at 398.

For his fourth ineffective assistance argument, defendant contends that defense counsel attempted to sabotage his defense by deliberately, over his objections, releasing information to the jury that he was present at the crime scenes. However, the record directly contradicts this account. Defendant's written statement, in which he admitted to being present at each robbery, was read into the record by the prosecution. Further, defendant explicitly endorsed defense counsel's request that the court publish to the jury the entire recording of his interview with police. Thus, defense counsel did not perform deficiently.

Finally, we reject defendant's assertion that defense counsel performed deficiently by failing to properly impeach witnesses. The challenged questioning occurred during defense counsel's cross-examination of Gavrilovici. Gavrilovici admitted that when he spoke with the police on March 17, he said he did not get a good look at the second perpetrator. But when defense counsel began to ask about his testimony at the preliminary examination, the prosecutor objected, arguing that the questioning amounted to improper impeachment. Following a bench conference to discuss the objection, defense counsel continued the questioning as follows:

> *Q*. Are you sure today that [defendant] is the person that you saw back on the day of the incident?
>
> *A*. Yes.
>
> *Q*. Okay. And each time you have been in court on -- have you been sure about --
>
> *A*. Yes.
>
> *Q*. -- your identification?
>
> *A*. Yes.

Even if defense counsel performed deficiently by discontinuing her attempt to impeach Gavrilovici's testimony, defendant makes no argument regarding how defense counsel's deficient performance prejudiced his case. Nor does the record demonstrate that but for defense counsel's performance, there is a reasonable probability that the outcome of trial would have been different. *Trakhtenberg*, 493 Mich at 51.

## IV. SCORING ERROR

Next, defendant asserts that the trial court incorrectly scored the guidelines. As a result, he argues, he is entitled to resentencing. However, defendant has failed to adequately brief this issue for appellate review. He only cursorily asserts that the trial court incorrectly scored the guidelines, with no further explanation or argument. A defendant cannot announce a position and leave it to this Court to rationalize the basis for his claim. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Accordingly, defendant forfeits this issue on appeal.

## V. SUBSTITUTION OF COUNSEL

Defendant argues that the trial court abused its discretion and violated his Sixth Amendment right to counsel when it refused to substitute defense counsel. Specifically, he asserts that he sought substitution multiple times, but the court only addressed his request once at sidebar, and denied substitution. But, as with his scoring error argument, defendant forfeits this issue for appellate review. Specifically, defendant fails to provide a record citation for his substitution request or the trial court's denial, and we could find no record support for his assertions. An appellant "may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) (quotation marks and citation omitted).

## VI. PROSECUTORIAL ERROR

Defendant next argues that by telling the jury, during closing arguments, to do its job and return with a guilty verdict, the prosecutor made an impermissible civic duty argument. Accordingly, he contends, he is entitled to a new trial.

To preserve a claim of prosecutorial error,[7] a defendant must contemporaneously object to the alleged misconduct and ask for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). If a defendant fails to timely and specifically object below, review is generally precluded " 'except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice.' " *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008), quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant failed to object to the statement during closing argument that he now challenges on appeal. Thus, defendant failed to preserve this issue for appellate review.

"[T]he test for prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court "consider[s] issues of prosecutorial [error] on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

During closing argument, the prosecutor stated: "I'm asking you now to do your job and to apply all of the evidence, everything that has been admitted. I want you to remember your collective memory as to the testimony that was given and how they testified and the way that they testified. I want you to apply all of that, all of these exhibits, all of the evidence to the charges filed, and I'm asking, do your job and come back with a verdict of guilty as charged on all these counts." Prosecutorial error occurs "when [the prosecutor] invites jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *People v*

---

[7] We note that in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), this Court explained that the accurate label for most prosecutorial misconduct claims is prosecutorial error, because only the most extreme cases rise to the level of prosecutorial misconduct.

*Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014). Considering the prosecutor's statement in context, defendant has not established that it amounted to plain error affecting his substantial rights, because the prosecutor asked the jury to decide the case on the basis of the evidence presented against defendant, not sympathy or civic duty.

Moreover, curative instructions will cure most inappropriate prosecutorial statements, and the trial court instructed the jury that it must decide the case based on the evidence, and that the lawyer's closing arguments do not constitute evidence.

## VII. RETALIATORY SENTENCING

Finally, defendant asserts that the trial court and prosecutor engaged in retaliatory sentencing because he did not take the plea deal offered before trial.

"A sentencing court cannot base its sentence on a defendant's decision to exercise his constitutional right to a jury trial." *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011). We review constitutional issues de novo. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

We conclude that defendant has failed to demonstrate that the trial court engaged in retaliatory sentencing. "[N]o accused person should face the dilemma of either waiving trial or facing retaliatory sentencing as a consequence of insisting on a trial. This Court has previously held that when a court determines a defendant's sentence, it may not properly consider the latter's refusal to plead guilty[.]" *People v Atkinson*, 125 Mich App 516, 518; 336 NW2d 41 (1983) (citation omitted). There is no indication in the record that the court held defendant's refusal to take a plea and decision to proceed to trial against him. In fact, at sentencing, when the court spoke with the parties about the 25-year mandatory minimum sentence for habitual offenders, defendant agreed that defense counsel explained it to him prior to trial and during plea negotiations.

Affirmed.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens

-10-