*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KELVIN JONES,

        Defendant-Appellant.

UNPUBLISHED
March 2, 2023

Nos. 358529; 358536; 358538
Genesee Circuit Court
LC Nos. 19-044670-FC;
        19-044738-FC;
        19-044812-FC

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

These are consolidated cases.[1] In Docket No. 358529, the jury found defendant guilty of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of person under 13 years of age by defendant 17 years of age or older). In Docket No. 358536, the jury found defendant guilty of two counts of CSC-I, MCL 750.520b(1)(a) (sexual penetration of person under 13 years of age). In Docket No. 358538, the jury found defendant guilty of six counts of CSC-I, MCL 750.520b(1)(a) (sexual penetration of person under 13 years of age). All three cases were joined for a single trial with one jury. The trial court sentenced defendant to serve concurrent prison sentences of 25 to 60 years in Docket No. 358529; 30 to 60 years for each count in Docket No. 358536; and 30 to 60 years for each count in Docket No. 358538. Defendant appeals by right. We affirm.

## I. BACKGROUND

These three cases involve defendant's sexual abuse of three children: TC, NK, and JW. TC and NK are sisters, and the abuse occurred in 2004. JW's abuse occurred in 2018.

TC testified that her abuse occurred in 2004 when she was nine years old. She was living with her mother, siblings, and defendant. Defendant was her mother's boyfriend at the time and

---

[1] *People v Jones*, unpublished order of the Court of Appeals, entered September 21, 2021 (Docket Nos. 358529; 358536; 358538).

often watched TC.  TC testified that the abuse happened multiple times per week whenever her mother was gone.  TC testified that, on one of these occasions, she was on her mother's bed when defendant came onto the bed naked, had TC climb on top of him, and told her to touch his penis.  TC testified that defendant also put his penis partially inside her anus.  TC testified that this occurred in other instances of abuse, which TC described in detail.  TC eventually told her school principal about the abuse, but TC was unable to testify at a prior trial.  Over a decade later, TC was informed by police about the new allegations against defendant regarding abuse of JW, and TC agreed to testify at trial regarding her own allegations from 2004.

NK testified that her abuse began in 2004 when she was eight years old.  NK testified that on one particular occasion defendant pulled off NK's pants, penetrated her vagina with his fingers, got on top of her, and put his penis outside her vagina.  NK explained that defendant was unable to put his penis inside her vagina because she prevented him from doing so and left the room.  However, NK testified that similar abuse occurred on several other occasions and that, on these occasions, defendant did put his penis inside NK's vagina.

JW testified that, on November 28, 2018, when he was seven years old, defendant, who was his aunt's boyfriend at the time, came to JW, told him to pull his pants and underwear down, and put his "private part" inside JW's anus.  Defendant stopped as soon as somebody entered the house.  JW subsequently told his mother what happened.

In Docket No. 358529, defendant was bound over on one count of CSC-I.  In Docket No. 358536, defendant was bound over on two counts of CSC-I and six counts of CSC-II (which were subsequently dismissed).  In Docket No. 358538, defendant was bound over on six counts of CSC-I.  Prior to joinder of the cases, the prosecution filed a notice of intent to introduce other-acts evidence under MCL 768.27a(1), which provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."

The prosecution intended to use the allegations from each case as evidence under MCL 768.27a in each of the other cases.  The prosecution contended that the evidence was admissible under the six-part test stated in *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012).  At a later hearing held to address the admissibility of the other-acts evidence, the parties and trial court discovered that the three cases had not been consolidated or joined despite their understanding that this had already occurred.  Although defendant's first trial counsel believed joinder had already occurred, he nonetheless placed an objection on the record to preserve the issue; however, he offered no further argument or comment against it.  The trial court joined the cases for a single trial after determining that it would not cause unfair prejudice to defendant.

Nearly one year later, defendant's new trial counsel moved for the trial court to reconsider its prior ruling on joinder, arguing that the cases were too dissimilar, too far apart in time, and too prejudicial for one jury to hear.  At the first portion of the motion hearing, the parties and trial court discovered that the trial court had never formally ruled on the admissibility of the other-acts evidence.  Defendant's trial counsel requested additional time to review the matter, and the hearing was adjourned.  At the continued hearing, defendant's trial counsel opposed admitting the allegations from the other victims because it was essentially "backdooring . . . character evidence

and propensity evidence," which would prevent defendant from "a fair chance." Defendant also summarily contended that admitting the evidence would be unfairly prejudicial under MRE 403. The parties and trial court agreed that the other-acts-evidence issue would be essentially moot if the trial court allowed joinder because the jury would hear each victim's testimony regardless.

The trial court allowed the other-acts evidence and denied defendant's motion for reconsideration, reasoning that defendant's argument essentially amounted to an argument against propensity and character evidence despite that MCL 768.27a clearly allowed admission of such evidence. The trial court determined that defendant had failed to show why the probative value of this evidence would be outweighed by any unfair prejudice. Given that this evidence was admissible, the trial court ruled that there was no reason not to have a single trial. A single trial would be more economical because it would prevent the victims and witnesses from having to testify at three separate trials.

At trial, in addition to the victims' testimony, Julie Swift, a sexual assault nurse examiner (SANE) with specialized training in the area of sexual assault examinations, testified that she performed an examination on JW after he was brought to the emergency room. JW informed Swift of defendant's abuse. Swift testified that her examination of JW revealed "redness and abrasions . . . around the rectal opening." Swift was asked, "[B]ased on your training and experience, is that indicative of anything?" Swift replied, "It can be indicative of some sort of a sexual trauma to the area. On some children, it can be a sign of uncleanliness, not cleaning well. Those are the two most common." Swift testified that she had not observed "any stool" in JW's rectum area. Thomas Cottrell, an expert in child sexual abuse and offender dynamics, testified that, although children's reactions to abuse varied, such children typically had difficulty disclosing the abuse and sometimes exhibited behavioral issues. Cottrell explained why delayed disclosures were common for abused children and why such children often had behavioral problems. Cottrell never directly addressed the victims or allegations; rather, he discussed child sexual abuse dynamics in a general fashion. In fact, Cottrell testified that he knew nothing about the cases, victims, or allegations.

On appeal, defendant advances three positions. First, defendant argues that joining the three cases for a single trial was an abuse of discretion. Second, he contends that Swift's and Cottrell's testimony constituted improper vouching for the victims' credibility and that his trial counsel was ineffective for failing to challenge such testimony. Finally, he maintains that the other-acts evidence was inadmissible under MCL 768.27a.

## II. ANALYSIS

### A. JOINDER

Defendant argues that the trial court abused its discretion by joining his three cases together. We disagree.

"Whether joinder is appropriate is a mixed question of fact and law," and "[t]o determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014) (quotation marks and citation omitted).

The trial court's factual findings are reviewed for clear error, but its interpretation of a court rule is reviewed de novo. *Id.* Yet, the trial court's "ultimate decision on permissive joinder of related charges lies firmly within the discretion of trial courts." *Id.* (quotation marks and citation omitted). A court abuses its discretion when its decision is "outside the range of principled outcomes." *Watkins*, 491 Mich at 467.

Joinder is governed by MCR 6.120, which provides in relevant part:

(B) Postcharging Permissive Joinder or Severance. On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

Charges are "not 'related' simply because they [are] 'of the same or similar character' "; rather, charges are related when the evidence shows that a "defendant engaged in ongoing acts constituting parts of his overall scheme or plan . . . ." *People v Williams*, 483 Mich 226, 235; 769 NW2d 605 (2009) (citation omitted).

For example, in *Gaines*, we held that joinder was proper when "[t]he evidence demonstrated that defendant engaged in ongoing acts related to his scheme of preying upon young, teenage girls from his high school." *Gaines*, 306 Mich App at 305. The *Gaines* defendant had

used text messages to communicate with the victims and encouraged them to keep their communications secret. In at least two cases, defendant requested naked photographs from the victims and, if they refused, threatened to cut off ties with them. He also used his parents' basement to isolate two of the young girls and sexually penetrate them. [*Id.*]

Moreover, we reasoned that "[t]he facts were not complex and presented little potential for confusion" and that, "[b]ecause defendant's actions against each victim were admissible in each case pursuant to MCL 768.27a, each victim would have been required to testify in each trial if the

-4-

cases were tried separately." *Id*. at 305. Accordingly, "[j]oinder offered convenience to the victims, who had already suffered harassment in their communities as a result of these cases." *Id*.

In the present case, the evidence demonstrated that defendant engaged in ongoing acts related to his scheme of preying upon young children who were close to him and over whom he had supervision. The victims were between seven and nine years old; defendant had been dating someone close to the victims; the abuse occurred in a house that defendant resided in; and the abuse was similar in its characteristics. The charges were not complex or confusing, but involved the same type of offense—criminal sexual conduct. Trial occurred in July 2021, and joinder occurred on February 20, 2020, which made joinder timely, and allowed defendant ample time to prepare his defense. Furthermore, a single case meant that the victims and witnesses would not need to testify at three separate trials, which made joinder more convenient and economical. Finally, as will be discussed in more detail in the proceeding paragraphs, the victims' allegations were admissible under MCL 768.27a. Therefore, "each victim would have been required to testify in each trial if the cases were tried separately." *Gaines*, 306 Mich App at 305.

## B. EXPERT TESTIMONY

Defendant argues that the admission of Cottrell's and Swift's testimony was plain error because it improperly vouched for the victims' credibility. He further contends that his trial counsel was ineffective for failing to challenge such testimony. We disagree.

Because defendant failed to preserve this issue by objecting to the complained-of testimony on the same ground as that raised on appeal, we review it for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Additionally, we review an unpreserved issue concerning ineffective assistance for errors apparent from the record. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *Id*. (quotation marks and citation omitted). "The standards for 'plain error' review and ineffective assistance of counsel are distinct, and therefore, a defendant can obtain relief for ineffective assistance of counsel even if he or she cannot demonstrate plain error." *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020).

"An expert may testify regarding typical symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim *or* to rebut an attack on the victim's credibility." *People v Peterson*, 450 Mich 349, 373; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995). However, "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty." *Id*. at 352. "[A]n examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the 'conclusion [is] nothing more than the doctor's opinion that the victim had told the truth.' " *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019) (citation omitted; second alteration in original). Similarly, "expert witnesses may not testify that children overwhelmingly do not lie when reporting sexual abuse because such testimony improperly vouches for the complainant's veracity." *Id*. at 235. Moreover, "examining physicians cannot testify that a complainant has been sexually assaulted or has been diagnosed with sexual abuse without physical evidence that corroborates the complainant's account of sexual assault or abuse

-5-

because such testimony vouches for the complainant's veracity and improperly interferes with the role of the jury." *Id.*

In the present case, defendant fails to point to the specific testimony from Cottrell that supposedly vouched for any of the victims' credibility. "Trial courts are not the research assistants of the litigants; the parties have a duty to *fully present* their legal arguments to the court for its resolution of their dispute." *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008) (emphasis added). Regardless, we discern no plain error in Cottrell's testimony. Cottrell never discussed *any* of the victims; in fact, he knew nothing about the cases, victims, or allegations and could not, therefore, speak to their credibility. Cottrell testified only as to *generalities* regarding child abuse victims, such as disclosure, behavioral issues, and grooming. Swift's testimony was not merely her opinion that JW had been abused; rather, she testified that, based on *physical* evidence, i.e., redness and abrasions around the rectum area without stool, there was a possibility that JW had been sexually abused. This was entirely proper. See *Thorpe*, 504 Mich at 235. Trial counsel has no duty to make a meritless or futile objection, see *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015), and defendant has accordingly failed to demonstrate that his trial counsel was ineffective.

## C. OTHER-ACTS EVIDENCE

Defendant argues that the admission of each victim's testimony at trial constituted the improper admission of other-acts evidence under MCL 768.27a. We disagree.

A trial court's decision to admit or preclude evidence is reviewed for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). A court abuses its discretion when its decision is "outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). But when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

Under MCL 768.27a(1),

in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

MCL 768.27a remains subject to MRE 403. *Watkins*, 491 Mich at 486. MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, "when applying MRE 403 to evidence admissible under MCL 768.27a, courts must

weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487.

Our Supreme Court clarified that "[t]his does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial." *Id.* The Court set forth a list of six factors for trial courts to consider when determining whether MCL 768.27a evidence should be excluded under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id.* at 487-488.]

This list is "illustrative rather than exhaustive." *Id.* at 488.

As previously discussed, the allegations in these three cases were substantially similar and involved defendant's scheme of preying upon young children between seven to nine years old, who were close to him both relationally and physically, and over whom he had supervision. Defendant had been dating someone close to each of the victims, and the abuse was similar in its characteristics. NK and TC were sisters, and their abuse occurred close in time and was continuous. Although JW's abuse occurred approximately 14 years later, Cottrell explained that delayed disclosure was typical for abused children, and the temporal gap was outweighed by the pattern of abuse. Additionally, although JW's abuse occurred only once, this was because of his immediate disclosure of the abuse. Regarding reliability, each victim testified in detail about the abuse, and JW's testimony was supported by physical evidence. Furthermore, given that this case involved largely a credibility contest of the victims, the other-acts evidence was helpful for the jury to understand defendant's propensity to commit these acts. Although normally propensity is improper for the jury to consider, MCL 768.27a clearly allows for this and, under MRE 403, must be weighed in favor of admissibility. See *Watkins*, 491 Mich at 487. We discern no abuse of discretion on the part of the trial court. See also *Gaines*, 306 Mich App at 305-306.

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ Christopher P. Yates